**Electronically Filed
Intermediate Court of Appeals
30736
13-FEB-2012
09:29 AM**

NO. 30736

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

CIVIL NO. 08-1-0977
ISLAND HELICOPTERS-KAUAI, INC., Plaintiff-Appellee,
v.
TESORO HAWAII CORPORATION, fka BHP PETROLEUM AMERICAS
REFINING, INC., a subsidiary of TESORO CORPORATION,
Defendant-Appellant/Cross-Appellee,
and
DOE DEFENDANTS 1-100, Defendants

————

TESORO HAWAII CORPORATION, fka BHP PETROLEUM AMERICAS
REFINING, INC., a subsidiary of TESORO CORPORATION,
Third-Party Plaintiff-Appellant/Cross-Appellee,
v.
STATE OF HAWAII, by and through its
DEPARTMENT OF TRANSPORTATION,
Third-Party Defendant-Appellee,
and
DOE DEFENDANTS 1-100, Defendants

————

STATE OF HAWAII, DEPARTMENT OF TRANSPORTATION,
Fourth-Party Plaintiff-Appellee,
v.
TURBOMECA ENGINE CORP., TURBOMECA USA,
Fourth-Party Defendant-Appellant/Cross-Appellee,
and
SAFRAN Group, SAFRAN USA, Inc.,
Fourth-Party Defendants-Appellees,
and
DOES 1-100, Fourth-Party Defendants

CIVIL NO. 08-1-1038
CHARLES DIPIAZZA and DRAGONFLY DEFERRED
TRUST dated 6 October 2006,
Plaintiffs-Appellees,
v.
TESORO HAWAII CORPORATION, fka BHP PETROLEUM AMERICAS
REFINING, INC., a subsidiary of TESORO CORPORATION,
Defendant-Appellant/Cross-Appellee,
and
DOE DEFENDANTS 1-100, Defendants

———————

TESORO HAWAII CORPORATION, fka BHP PETROLEUM AMERICAS
REFINING, INC., a subsidiary of TESORO CORPORATION,
Third-Party Plaintiff-Appellant/Cross-Appellee,
v.
STATE OF HAWAII, by and through its
DEPARTMENT OF TRANSPORTATION,
Third-Party Defendant-Appellee,
and
DOE DEFENDANTS 1-100, Defendants

———————

STATE OF HAWAII,
Fourth-Party Plaintiff-Appellee,
v.
TURBOMECA ENGINE CORP., TURBOMECA USA,
Fourth-Party Defendant-Cross-Appellant,
and
SAFRAN Group, SAFRAN USA, Inc.,
Fourth-Party Defendant-Appellee,
and
DOES 1-100, Fourth-Party Defendants

and

CIVIL NO. 08-1-2235
JACK HARTER HELICOPTERS, INC.,
Plaintiff-Appellee,
v.
TESORO HAWAII CORPORATION, fka BHP PETROLEUM,
Defendants-Appellant/Cross-Appellee,
and
DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10;
DOE NON-PROFIT ENTITIES 1-10; and DOE
GOVERNMENTAL ENTITIES 1-10, Defendants

———————

TESORO HAWAII CORPORATION fka BHP PETROLEUM,
Third-Party Plaintiff-Appellant/Cross-Appellee,
v.
STATE OF HAWAII, by and through its
DEPARTMENT OF TRANSPORTATION,
Third-Party Defendant-Appellee,

———————

STATE OF HAWAII,
Fourth Party Plaintiff-Appellee,
v.
TURBOMECA S.A., TURBOMECA USA, INC.,
Fourth-Party Defendant-Cross-Appellant,
and
SAFRAN Group, SAFRAN USA, INC.,
Fourth-Party Defendant-Appellee,
and
DOES 1-100, Fourth-Party Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NOs. 08-1-0977, 08-1-1038, 08-1-2235)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Fujise, JJ.)

Defendant/Counterclaim Plaintiff/Third-Party
Plaintiff/Third-Party Counterclaim Defendant-Appellant/Cross-
Appellee Tesoro Hawaii Corporation, fka BHP Petroleum Americas
Refining, Inc., a subsidiary of Tesoro Corporation (Tesoro),
appeals[1] from the "Order Granting Petition for Approval of Good
Faith Settlements By & Between Plaintiffs and Third-Party
Defendants/Fourth-Party Plaintiff State of Hawaiʻi Department of
Transportation-Airports Division, Filed June 16, 2010," (Order
Granting State's Petition) filed on August 23, 2010 in the
Circuit Court of the First Circuit (circuit court).[2] The Order

———————

[1] Tesoro also appealed from the "Order Granting Petition for
Determination of Good Faith Settlement and Dismissing All Claims Against
Fourth-Party Defendants Turbomeca S.A. and Turbomeca USA, Inc.," (Order
Granting Turbomeca's Petition) filed on August 23, 2010 in the circuit court.
On April 26, 2011, this court entered the "Order Approving Stipulation for
Partial Dismissal of Appeal," which, inter alia, dismissed Tesoro's appeal of
the Order Granting Turbomeca's Petition, but specifically noted that Tesoro's
appeal of the Order Granting State's Petition remained pending.

[2] The Honorable Karl K. Sakamoto presided.

Granting State's Petition found that the settlement agreement between the State of Hawai'i Department of Transportation-Airports Division (the State) and Plaintiffs/Counterclaim Defendants-Appellees/Cross-Appellees Island Helicopters-Kauai, Inc. (Island Helicopters) and Jack Harter Helicopters, Inc., (Harter) and Plaintiffs-Appellees/Cross-Appellees Charles Dipiazza and Dragonfly Deferred Trust dated 6 October 2006 (Dipiazza) (collectively, Plaintiffs) was entered into in good faith.

On appeal, Tesoro contends the circuit court erred when it

(1) entered the Order Granting State's Petition because the settlement agreement failed as a matter of law for lack of consideration,

(2) entered the Order Granting State's Petition because the evidence shows that the settlement agreement was not made in good faith pursuant to Hawaii Revised Statutes (HRS) § 663-15 (Supp. 2010), and

(3) did not specifically state "that Tesoro's indemnity and contribution claims against the State should not be barred."

## I. BACKGROUND

Plaintiffs, who operated commercial helicopter tours on Kauai, alleged Tesoro supplied them with contaminated Jet A fuel, "which caused its helicopter engines to freeze up after being shut off, preventing the engines from re-starting properly ('coking problem')." Plaintiffs filed complaints against Tesoro in Civil Nos. 08-1-0977-05, 08-1-2235-10, and 08-1-1038-05.[3] On January 22, 2010, the circuit court consolidated the three cases for purposes of liability.

The State was joined in the action based on Tesoro's third-party complaint that the State's negligent maintenance and operation of its fuel dispensing system at Lihue Heliport caused

---

[3] The Plaintiffs' Complaints were nearly identical and the allegations contained in Island Helicopter's Civil No. 08-1-0977-05 were representative of the allegations in the other two civil suits.

the Plaintiffs' coking problems and damages. Cross-Appellants/Fourth-Party Defendants Turbomeca S.A. and Turbomeca USA (Turbomeca Defendants) were joined in the action based on the State's complaint that Turbomeca Defendant's defective design and manufacture of the Arriel engine caused the fuel coking problem and the subsequent alleged economic damages.

On June 15, 2010, the State filed a "Petition for Approval of Good Faith Settlements By & Between Plaintiffs and Third-Party Defendant/Fourth-Party Plaintiff [State]." On August 23, 2010, the circuit court determined the parties had settled in good faith and entered the Order Granting State's Petition.

On September 10, 2010, Tesoro filed a notice of appeal pursuant to HRS § 663-15.5(e).

## II. STANDARDS OF REVIEW

> [T]he determination of whether a settlement is in good faith [is left] to the sound discretion of the trial court in light of the totality of the circumstances surrounding the settlement . . . . On appeal, the trial court's determination will be reviewed for abuse of discretion.

> [Troyer v. Adams, 102 Hawai'i 399, 427, 77 P.3d 83, 111 (2003)]. An appellate court should consider the decision "in light of all of the relevant circumstances extant at the time of settlement." Id. at 402, 77 P.3d at 86.

> "An abuse of discretion occurs when the decisionmaker 'exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party.'" In re Water Use Permit Applications, 94 Hawai'i 97, 183, 9 P.3d 409, 495 (2000)[.]

Brooks v. Dana Nance & Co., 113 Hawai'i 406, 412, 153 P.3d 1091, 1097 (2007).

## III. DISCUSSION

A. **The circuit court did not err when it entered the Order Granting State's Petition.**

(1) **The settlement agreement did not fail for lack of consideration.**

Tesoro contends that the settlement agreement fails for lack of consideration. A settlement agreement is a form of contract, and like other contractual agreements, must be supported by consideration. Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawai'i 277, 288, 290 172 P.3d 1021,

5

1032, 1034 (2007). A settlement is supported by consideration "if the parties make or promise mutual concessions as a means of terminating their dispute; no additional consideration is required." Sylvester v. Animal Emergency Clinic of Oahu, 72 Haw. 560, 567, 825 P.2d 1053, 1057 (1992) (quoting 15A Am. Jur. 2d *Compromise and Settlement* § 13 (1976)). A release or covenant not to sue applies to a good faith settlement. HRS § 663-15.5(a).[4]

Pursuant to the settlement agreement, Plaintiffs and the State agreed to dismiss with prejudice all claims between them "arisen, arising, or to arise out of the 'subject claims.'" In consideration for this release, the State paid Plaintiffs a total of $75,000.[5] Plaintiffs were precluded from pursuing any potential claims against the State related to the coking problems. Tesoro argues that any future claims by Plaintiffs are time-barred by the statute of limitations and as such, Plaintiffs' promise not to bring a claim did not represent consideration.

------------------------------------------------------------

[4] HRS § 663-15.5(a) provides:

§663-15.5 **Release; joint tortfeasors; co-obligors; good faith settlement.** (a) A release, dismissal with or without prejudice, or a covenant not to sue or not to enforce a judgment that is given in good faith under subsection (b) to one or more joint tortfeasors, or to one or more co-obligors who are mutually subject to contribution rights, shall:

    (1)    Not discharge any other joint tortfeasor or co-obligor not released from liability unless its terms so provide;

    (2)    Reduce the claims against the other joint tortfeasor or co-obligor not released in the amount stipulated by the release, dismissal, or covenant, or in the amount of the consideration paid for it, whichever is greater; and

    (3)    Discharge the party to whom it is given from all liability for any contribution to any other joint tortfeasor or co-obligor.

This subsection shall not apply to co-obligors who have expressly agreed in writing to an apportionment of liability for losses or claims among themselves.

[5] The Plaintiffs -- Island Helicopters, Harter, and Dipiazza -- each settled for $25,000.

The statute of limitations for tort actions is two years, unless the alleged violation is a continuing tort. HRS § 662-4 (1993),[6] Anderson v. State, 88 Hawai'i 241, 247, 965 P.2d 783 (1998). The coking problem had been occurring over a number of years and Plaintiffs could have conceivably argued in the future that the State was liable for a continuous tort. Additionally, Plaintiffs could experience a new coking problem, which would start anew the running of the statute of limitations. Anderson, 88 Hawai'i at 247, 956 P.2d at 789 ("[T]he statute does not begin to run until the plaintiff knew or should have known of the defendant's negligence.") (internal quotation marks and citation omitted).

At the July 20, 2010 hearing on the petition for the determination of good faith settlements, Plaintiffs pointed out they had not asserted any claims against the State because they had yet to discover any cause of action. By settling, Plaintiffs gave up their right to bring such a claim against the State, the State gave up their right to bring a related claim against the Plaintiffs, and the State provided a monetary settlement. The terms of the settlement agreement were not devoid of consideration.

Tesoro contends that $75,000 was not fair consideration, alleging that the settlement amount was "inordinately disproportionate with respect to the state's liability," and should have been "approximately $4,977,454 or fifty-percent of the damages sought." Whether the State had any liability in this case had yet to be determined. Settlements often take place before all the facts are known because the parties want to avoid the high costs of litigation and the uncertainty of the outcome. Exotics Hawaii-Kona, 116 Hawai'i at 301, 172 P.3d at 1045. "In every settlement, the agreed upon

---

[6] HRS § 662-4 provides in relevant part:

§662-4 Statute of limitations. A tort claim against the State shall be forever barred unless action is begun within two years after the claim accrues[.]

amount undoubtedly is not the 'best case scenario' for either side, but rather is a compromise of their respective positions to avoid the multiple risks of trial where they might face their 'worse case scenario.'" Exotics Hawaii-Kona, 116 Hawai'i at 301, 172 P.3d at 1045. Furthermore,

> [t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. In fact[,] there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.

> In re Warner Commc'ns Sec. Litig., 618 F.Supp. 735, 745 (S.D.N.Y.1985) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 n. 2 (2d Cir.1974)) (ellipsis and other citations omitted).

Exotics Hawaii-Kona, 116 Hawai'i at 301, 172 P.3d at 1045.

The State denied any liability for the coking problems, but avoided the expense and uncertainty of protracted litigation by settling with Plaintiffs. As long as there is no fraud or material misrepresentation, the parties may freely bargain for a settlement that satisfies both sides to the agreement. Exotics Hawaii-Kona, 116 Hawai'i at 288, 172 P.3d at 1032. The settlement agreement did not fail for lack of consideration.

### (2) The settlement agreement was made in good faith under the Troyer factors.

Tesoro contends the circuit court erred when it entered the Order Granting State's Petition because the settlement agreement between Plaintiffs and the State was not made in good faith. A good faith settlement (1) discharges the settling party from liability for contribution to other joint tortfeasors, (2) bars other joint tortfeasors from any further claims against the settling joint tortfeasor, except where there is a written indemnity agreement, and (3) results in dismissal of all cross-claims against the settling joint tortfeasor, except where there is a written indemnity agreement. HRS § 663-15.5(a) and (d).

Troyer v. Adams, 102 Hawai'i 399, 77 P.3d 83 (2003), is the seminal case in Hawai'i interpreting the good faith language

8

of HRS § 663-15.5. The Hawai'i Supreme Court adopted a "totality of the circumstances" approach for determining whether a settlement was made in good faith under HRS § 663-15.5. Troyer, 102 Hawai'i at 425, 77 P.3d at 109. In adopting this approach, the supreme court recognized the legislative intent to simplify procedures and reduce costs while still providing courts the "opportunity to prevent collusive settlements aimed at injuring non-settling tortfeasors' interests." Id. at 427, 77 P.3d at 111.

"[T]he good faith of the parties is substantially a function of their states of mind and the circumstances of which they are aware at the time of settlement[.]" Troyer, 102 Hawai'i at 430, 77 P.3d at 114. Tesoro bears the burden of proving the settlement was not made in good faith. HRS § 663-15.5(b).[7] On appeal, the trial court's determination is reviewed for abuse of discretion. Id. at 427, 77 P.3d at 111. "[T]he question whether a settlement is given in good faith for purposes of HRS § 663-15.5 is a matter left to the discretion of the trial court in light of all the relevant circumstances extant at the time of settlement[.]" Troyer, 102 Hawai'i at 434, 77 P.3d at 118.

To determine whether parties have entered into a good faith settlement, the court may consider, among others, the following Troyer factors:

> (1) the type of case and difficulty of proof at trial, e.g., rear-end motor vehicle collision, medical malpractice, product liability, etc.; (2) the realistic approximation of

---

[7] HRS § 663-15.5(b) provides in relevant part:

(b) For purposes of subsection (a), any party shall petition the court for a hearing on the issue of good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, serving notice to all other known joint tortfeasors or co-obligors.

The petition shall indicate the settling parties and, except for a settlement that includes a confidentiality agreement regarding the case or the terms of the settlement, the basis, terms, and settlement amount.

. . . [A] nonsettling alleged joint tortfeasor or co-obligor may file an objection to contest the good faith of the settlement. . . . A nonsettling alleged joint tortfeasor or co-obligor asserting a lack of good faith shall have the burden of proof on that issue.

> total damages that the plaintiff seeks; (3) the strength of
> the plaintiff's claim and the realistic likelihood of his or
> her success at trial; (4) the predicted expense of
> litigation; (5) the relative degree of fault of the settling
> tortfeasors; (6) the amount of consideration paid to settle
> the claims; (7) the insurance policy limits and solvency of
> the joint tortfeasors; (8) the relationship among the
> parties and whether it is conducive to collusion or wrongful
> conduct; and (9) any other evidence that the settlement is
> aimed at injuring the interests of a non-settling tortfeasor
> or motivated by other wrongful purpose. The foregoing list
> is not exclusive, and the court may consider any other
> factor that is relevant to whether a settlement has been
> given in good faith.

Id. at 427 77 P.3d at 111.

In applying the Troyer factors to the settlement between the State and Plaintiffs, Tesoro maintains that the fifth, sixth, seventh, and ninth factors weighed against a finding of good faith.

The fifth factor is "the relative degree of fault of the settling tortfeasors." Troyer, 102 Hawai‘i at 427, 77 P.3d at 112. Tesoro argues that the evidence "strongly indicated" that the State's fuel dispensing system caused the coking problems and, therefore, "the State is responsible for approximately half of the damages claimed by [Plaintiffs]." The State offers evidence that contaminated fuel provided by Tesoro was the cause of the coking problem. The relative degree of fault of the State, if any, had yet to be determined, but as noted by the Hawai‘i Supreme Court, the Hawai‘i Legislature's codification of HRS § 663-15.5 indicated that the legislature "was more interested in encouraging settlements than ensuring the equitable apportionment of liability." Troyer, 102 Hawai‘i at 426, 77 P.3d at 110. Plaintiffs acknowledged that "[t]he State is buying its peace with regard to claims we may discover against the State." The parties are free to settle before the relative degree of fault of the settling tortfeasors is fully known.

The sixth Troyer factor is "the amount of consideration paid to settle the claims[.]" Id. at 427, 77 P.3d at 111. Similar to its argument regarding the fifth Troyer factor, Tesoro argues that the State was at least 50% at fault and, therefore,

was liable for 50% of Plaintiffs' claim of $9,954,908 in damages. The State argues it had strong defenses, but felt $75,000 was an amount it was willing to pay to immunize itself against any future litigation in this case. In Troyer, the supreme court noted that "the price of a settlement alone rarely appears to be the outcome-dispositive factor regarding a settlement's bad faith." Troyer, 102 Hawaiʻi at 427, 77 P.3d at 111. As previously discussed, the amount of consideration paid under the terms of the settlement agreement is generally left to the settling parties to decide.

Under the seventh Troyer factor, regarding insurance policy limits, Tesoro argues that because the State had an insurance policy of over $400 million, settling for $75,000 was unreasonable and collusive. Troyer, 102 Hawaiʻi at 427, 77 P.3d at 111. Tesoro points to nothing to support the contention that, in a case where liability has not been determined, a defendant is settling in bad faith if its settlement amount is substantially less than its insurance policy limit.

Tesoro contends the ninth Troyer factor, "any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose," supports a determination of bad faith. Troyer, 102 Hawaiʻi at 427, 77 P.3d at 111. In its brief, Tesoro argues that the settlement agreement between Plaintiffs and the Turbomeca Defendants somehow implicates the State as entering into a collusive agreement aimed at injuring Tesoro. Tesoro cites to Turbomeca Defendants' Memorandum in Support of Petition for Determination of Good Faith Settlement, in which Turbomeca Defendants quote from an e-mail from the mediator to "counsel for Plaintiffs, counsel for the Turbomeca Defendants, and the [circuit court]." According to the quoted e-mail, one of the terms of the settlement between the Plaintiffs and Turbomeca Defendants was that "[s]ettling defendants agree to provide litigation-related assistance to the settling [P]laintiffs on terms that the parties will formally agree to." Tesoro argues

that this statement indicates collusion by the State, Turbomeca Defendants, and Plaintiffs. Tesoro fails to explain how a settlement agreement between Plaintiffs and Turbomeca Defendants implicates the State.

Finally, Tesoro contends that when the State entered into the settlement agreement with Plaintiffs, the State was not acting in good faith because it was seeking "to accomplish indirectly that which it could not do directly, i.e. secure the dismissal of Tesoro's claims . . . without prevailing on a summary judgment motion."

Tesoro cites to <u>Brooks v. Dana Nance & Co.</u>, 113 Hawaiʻi 406, 153 P.3d 1091 (2007), in which the Hawaiʻi Supreme Court held "that a settlement, wherein a party seeks to accomplish indirectly that which it is expressly barred by applicable law from accomplishing directly, is not in good faith." <u>Id.</u> at 417, 153 P.3d at 1102. <u>Brooks</u> does not apply to the instant case because HRS § 663-15.5 does not bar the State from settling with Plaintiffs.

In <u>Brooks</u>, the United States Veterans Administration (VA) held the mortgage on Brooks' home. <u>Id.</u> at 409, 153 P.3d at 1094. A mortgage servicing company, Seasons, serviced the mortgage payments and contracted with a maintenance company, Fidelity, to do maintenance work on mortgaged properties in default or abandoned. <u>Id.</u> at 409, 153 P.3d at 1094. Seasons and Fidelity entered into a contract with a mutual indemnification clause. <u>Id.</u> at 409, 153 P.3d at 1094. The defaulting homeowner, Brooks, filed suit against Seasons and Fidelity after Seasons instructed Fidelity to "secure the property" and Fidelity changed the lock on the front door and removed abandoned vehicles and other debris, in spite of the VA's instructions not to secure the property until after foreclosure. <u>Id.</u> at 409, 153 P.3d at 1094. Fidelity and Seasons filed cross-claims against one another for contribution and indemnification. <u>Id.</u> at 410, 153 P.3d at 1095. Subsequently, Brooks and Seasons entered into a settlement agreement that was conditioned on the circuit court's dismissal

of Fidelity's cross-claim against Seasons. Id. at 411, 153 P.3d at 1096. The circuit court determined the settlement was made in good faith, in spite of the fact that a good faith settlement does not bar claims among joint tortfeasors based on a written indemnity agreement. HRS § 663-15.5(d).[8] In other words, in the settlement agreement, Seasons was accomplishing indirectly what the statute prohibited him from accomplishing directly; namely, the dismissal of Fidelity's cross-claim against Seasons, even though the claim was based on a written indemnity agreement which is not dismissed as a result of a good faith settlement. That is not the situation in the instant case.

Here, in an effort to save litigation costs, expedite resolution, and achieve some protection, the State and Plaintiffs entered into a settlement agreement. In the State's memorandum in support of its petition to the circuit court for a determination of a good faith settlement, the State explained that in mediation, the mediator suggested that

> if the STATE would be willing to make a settlement offer to Plaintiffs in an amount which Plaintiffs would accept, and the agreement is deemed a good faith settlement, it would result in a dismissal with prejudice of the third party complaint filed by Tesoro against the STATE, which would extricate the STATE from litigation it feels it should never have been dragged into in the first place.

Tesoro's third-party complaint against the State was not based on a written indemnification agreement, but instead, was based on a claim that the State was the tortfeasor. Tesoro further claimed that if Tesoro and the State were found to be joint tortfeasors, Tesoro was "entitled to contribution,

---

[8] HRS § 663-15.5(d) provides:

(d)    A determination by the court that a settlement was made in good faith shall:

(1)    Bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor, except those based on a written indemnity agreement; and

(2)    Result in a dismissal of all cross-claims filed against the settling joint tortfeasor or co-obligor, except those based on a written indemnity agreement.

subrogation, reimbursement and/or indemnification," based on joint liability. The State did not ask for, nor did the circuit court grant, a dismissal of any claim based on a written indemnification agreement. See *infra* Sec. B.

A determination of a good faith settlement protects the settling tortfeasor against claims brought by any non-settling tortfeasor, and thereby, encourages settlement. The State used the statute to accomplish precisely what the statute is designed to accomplish -- settlement.

**B.    Tesoro's contractual claims for indemnity are not barred by the good faith settlement agreement between the State and Plaintiffs.**

Tesoro contends the circuit court erred when it did not specifically state "that Tesoro's indemnity and contribution claims against the State should not be barred." Tesoro does not argue for a right to contribution and so waives that point on appeal. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28 (b) (7) ("Points not argued may be deemed waived.").

Tesoro argues it had an April 13, 1994 indemnity contract with the State that allows Tesoro's claims against the State for indemnification to survive a good faith settlement determination. We find nothing in the circuit court's Order Granting State's Petition that precludes Tesoro from pursuing a claim for indemnification based on a written indemnification agreement. The circuit court ordered that "[p]ursuant to [HRS] § 663-15.5(d), this determination [of good faith settlement between the State and Plaintiffs] shall bar any other joint tortfeasor or co-obligor from any further claims against [the State] for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." The circuit court made no order precluding Tesoro's right under HRS § 663-15.5(d) to pursue a claim for indemnification based on a written indemnification agreement. We conclude that the circuit court did not err when it did not specifically state that Tesoro retained its right under HRS

§ 663-15.5(d) to pursue its claim against the State based on a written indemnification agreement.

## IV. CONCLUSION

The "Order Granting Petition for Approval of Good Faith Settlements By & Between Plaintiffs and Third-Party Defendants/Fourth-Party Plaintiff State of Hawai'i Department of Transportation-Airports Division, Filed June 16, 2010," filed on August 23, 2010 in the Circuit Court of the First Circuit is affirmed.

DATED:   Honolulu, Hawai'i, February 13, 2012.

On the briefs:

George W. Playdon, Jr.
(on the opening brief)
Jeffre W. Juliano
Kristi L. Arakaki
(on the opening and reply briefs)
Michael J. McGuigan
Kelvin H. Kaneshiro
(on the reply brief)
(O'Connor Playdon & Guben)
for Defendant-Appellant
Tesoro Hawaii Corporation.

Chief Judge

Associate Judge

Randall Y. Yamamoto
Brian Y. Hiyane
(Kawashima, Lorusso)
and
James L. Michaelis, pro hac vice
Kenneth L. Crowder, pro hac vice
(Michaelis, Montanari & Johnson)
and
Bruce Wakuzawa
for Third-Party Defendant/
Fourth-Party Plaintiff-Appellee
State of Hawaii, Department of
Transportation.

Associate Judge